OPINION OF THE COURT
Arthur W. Lonschein, J.
Rule 130-1.1 of the Rules of the Chief Administrator of the *50 Courts (22 NYCRR 130-1.1) permits the imposition of sanctions because of frivolous conduct indulged in by attorneys in civil litigation. The rule defines a lawyer’s conduct as frivolous if he or she takes a position which is "completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law” or "is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another.” (22 NYCRR 130-1.1 [c] [1], [2].)
On November 22, 1996, following a jury verdict for the plaintiff on damages, the court ordered that defendant’s counsel, Kenneth L. Brown, Esq., and his firm, Rivkin, Radler and Kremer, Esqs., appear before the court on December 11, 1996 to show cause why they should not be sanctioned for frivolous conduct in connection with this litigation. On December 11, 1996, having heard the arguments of counsel for the defendant that his conduct was not frivolous within the meaning of the rule and that he should not be sanctioned, and after due deliberation having been had, the court finds that Kenneth L. Brown, Esq., and Rivkin, Radler and Kremer, Esqs., indulged in frivolous conduct as detailed infra and are directed to pay a sanction to the Lawyers’ Fund for Client Protection in the sum of $10,000.
The above-named case was sent to this part on November 18, 1996, after having been marked ready in the Trial Assignment Part, for jury selection and trial. Rule 202.33 (b) of the Uniform Rules for Trial Courts (22 NYCRR 202.33 [b] [eff Jan. 1, 1996]) mandates that the "trial judge shall meet * * * with counsel * * * and shall attempt to bring about a disposition of the action.” Pursuant to the rule, the court initiated settlement discussions. As part of the discussion and in his bill of particulars, the plaintiff claimed serious injuries consisting of three herniated discs, a torn medial meniscus with athroscopic surgery with other injuries and offered to settle the case for $90,000. The limit of defendant’s liability policy was $100,000. The defendant through counsel rejected the plaintiffs demand, made no counteroffer and the case proceeded to trial with a jury returning a verdict in the amount of $485,000 for the plaintiff.
Refusal to meaningfully participate in settlement discussions cannot be defined as frivolous conduct and any defendant has the right to a trial for a jury to evaluate damages. This is so despite the fact that defendant’s counsel refused to partici *51 pate in meaningful settlement discussions and even though his attitude might have been viewed as stubborn or unreasonable or bad faith, he was well within his rights not to make a settlement offer. This case, according to the attorney for the plaintiff, involved a two-car collision where it was claimed that the defendant’s car went through a full stop sign without stopping, collided with the plaintiff’s car causing the injuries.
When this case arrived in this part and despite the fact that the case had been marked ready for trial in the Trial Assignment Part and no application for an adjournment having been made in that part, the defendant’s counsel prior to the voir dire, made an application for an adjournment seeking that the matter be put off until the first of the year on the ground that the defendant, an 82-year-old woman, had open heart surgery at the end of September and was not well enough to come into court to testify. The court informed counsel that he should have informed the Judge sitting in the Trial Assignment Part and made the application for an adjournment before the case was marked ready that he was seeking a postponement because of the disability of his client. The application for an adjournment was denied on those grounds. Nevertheless this court made the offer of allowing the attorney for defendant to read defendant’s deposition into the record as part of his case pursuant to CPLR 3117 (a) (3), if counsel would present to the court proof that his client was ill by way of a medical statement from a doctor treating her. The court told counsel to get such a statement overnight; counsel said "fine” and the court went on that it would not accept a third-party statement from an investigator about her medical condition.
Parenthetically, I inspected the deposition of the defendant (which was not offered in evidence) wherein the defendant did not deny going through a full stop sign and where she made no statement about seeing the plaintiff’s automobile. Thus I concluded the deposition would not have helped the defendant and probably would not be read despite my offer to counsel. (CPLR 3117 [a] [3].) In any event, counsel never chose to read the deposition under the terms permitted by the court; indeed he never made the offer to read it.
The following day, counsel submitted to me a medical statement to the effect that the defendant could not testify because she was suffering not from a heart condition, but from senile dementia. That being so, any application to call this defendant after an adjourned date would have been futile since she would never be in a condition to testify. The application by defen *52 dant’s counsel for an adjournment on grounds that she was presently too ill to testify was specious and indeed frivolous. Counsel knew or should have known during his preparation for trial that his client could not testify and the application for an adjournment was frivolous and was made to gain time and delay the resolution of the plaintiff’s case.
In discussing this case before trial, it appeared to the court that there was no defense. The plaintiff’s position was that he was proceeding on a roadway, slowed down before entering an intersection which was a short distance from his home, where he knew there was a stop sign for cross-traffic, saw the defendant’s car before the intersection and proceeded when suddenly defendant’s car went through the intersection without slowing or stopping, heading directly for him and the plaintiff in attempting to get out of the way and avoid the accident, speeded up, too late to avoid a collision. I was told that there was an independent witness who lived on that corner who observed the accident and would testify in support of the plaintiff’s contention, that defendant went through a stop sign without stopping, colliding with the plaintiff. The court asked counsel for the defendant if he would concede liability because of the circumstances and because he had no witnesses to give any contrary version of the accident. It appeared to the court that if plaintiff’s version was correct there was no defense and advised counsel for defendant that if there were no defense the court would direct a verdict for the plaintiff, that sanctions would be imposed upon counsel and his firm for not admitting liability at the point where he should admit liability pursuant to rule 130-1.1 and by continuing to deny liability and thus forcing a trial when the lack of legal and factual basis was apparent or should have been apparent.
To warn the defendant’s counsel that his position was untenable, the court read from a decision of the Appellate Division, Second Department decided 10 days previously on an appeal from the granting of a motion for summary judgment (Maxwell v Land-Saunders, 233 AD2d 303) where a defendant either failed to stop át a stop sign or failed to yield the right-of-way, under circumstances similar to the case at bar. In that case, the Court held the evidence did not raise a triable issue of fact and ordered summary judgment which was affirmed on appeal.
After a jury panel was summoned, the court, pursuant to the Uniform Rules for Trial Courts involving jury selection (22 NYCRR 202.33 [e] [eflf Jan. 1, 1996] ["Presence of Judge at the *53 Voir Dire. In order to ensure an efficient and dignified selection process, the trial judge shall preside at the commencement of the voir dire and open the voir dire proceeding”]) the court addressed the jury, introduced the participants and generally told the panelists the importance of jury selection, and explained to them the purpose of a voir dire. To let the jury know the nature of the case and the claims of the parties and the function of the jury, the court said to the assembled panel the following: "This case is an accident case where plaintiff was injured or claims an injury * * * It is the plaintiffs contention the automobile in which plaintiff was a passenger was on a highway in Queens County, when defendant’s car suddenly went through a stop sign colliding with it causing injuries.” At a sidebar conference, defendant’s counsel made an application not only that the court recuse itself but also that it dismiss the jury because the jury was told of the plaintiffs claims. Counsel stated that the court is "not supposed to say anything whatsoever about the accident or anything that happened during the voir dire”. The court denied the motion to be recused and to disband the jury on the ground that such an application is frivolous. Upon reflection and for the purpose of this proceeding, under rule 130-1.1, I reaffirm such conduct is frivolous and a waste of the court’s time, that such an application is completely without merit in law and fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law.
Defendant’s counsel was well aware of what the plaintiff’s testimony would be because of the pretrial discovery. The plaintiff testified that he was driving his car, that he had the right-of-way, that a stop sign at the intersection where the accident occurred called for a stop of crossing traffic, that his home was about a block and a half from the intersection, that he approached the intersection at 20 to 25 miles per hour, that he slowed down to 10 to 15 miles per hour, that the other car was about 25 meters from the intersection when he had slowed down, that he proceeded slowly into the intersection and while almost in the process of crossing the intersection, looked to his left and heard his wife scream "she is not stopping” and tried to accelerate to avoid the accident. At that time, the defendant was 10 feet away coming towards him and the elapsed time was 2 to 3 seconds from when he saw defendant’s car in the intersection till the accident happened. A witness whose home was at the accident corner was called to testify that the defendant’s car did not stop and kept going at the stop sign. No *54 real question of fact as to the happening of the accident was raised during the defendant’s cross-examination of the plaintiff and his witness and, of course, the defendant did not testify nor was her deposition read nor were any witnesses called in her behalf.
Following the resting of both plaintiff and defendant, the court directed a verdict on the issue of liability against the defendant. The insistence of defendant’s counsel of a trial on liability, where the liability of his client was as clear as it is here, was frivolous. It was doubly frivolous, since counsel had been warned by the court that if there was no bona fide question on the issue of liability, and that if the court were constrained to direct a verdict for the plaintiff, the court would consider the forcing of a trial on liability to be frivolous conduct and act accordingly. After ignoring the court’s warning and electing a trial on liability, counsel’s conduct was exacerbated by his statement to the jury in his opening address that "plaintiff has told you that he is going to prove or try and prove that my client was responsible. I submit you are going to find that my client was not responsible, that the negligent party in this action was the plaintiff himself in his actions in driving his car were the proximate cause of this accident.” Such a preposterous claim under the known facts of this case certainly figures as frivolous conduct.
Following the court’s direction of a verdict for the plaintiff on the liability issue, the damages issue commenced. Plaintiff testified as to his physical condition as did two physicians concerning plaintiff’s injuries. The defendant called a physician who examined the defendant during the course of the litigation. The jury found that the plaintiff sustained a "serious injury” as a result of the accident and awarded him $485,000.
Following the verdict, defendant’s counsel did not choose to appeal from any claim of error by the court including the direction of a plaintiff’s verdict. Instead, he approached plaintiff’s counsel and offered to settle the claim for an amount less than the verdict which offer was accepted by the plaintiff, thus terminating the proceedings, and mooting any possible appeal.
In deciding the sanction to be imposed the court took into consideration various factors. The most egregious of these factors was the defendant’s counsel’s waste of the court’s time by insisting on a trial in a situation where there was no issue of fact that could have been tried. Indeed, no issue of fact was raised in the trial and the court was thus constrained to grant the plaintiff’s motion for a directed verdict. Compounding *55 counsel’s conduct was the court’s warning that if counsel insisted on a trial and if the court directed a plaintiffs verdict on the issue of liability, the court would find such a position as frivolous conduct under the rule and impose severe sanctions against counsel.
Instead of conceding liability, counsel insisted on a trial where there was no defense that could have been raised and where counsel either knew or should have known what the eventual result would be. To urge to the jury that the fault for the accident was plaintiff’s under the circumstances of this case, only underscored the frivolous conduct of the plaintiff.
In opting for a trial, counsel wasted the court’s time, the time of six citizens who gave their time to serve on the jury, the time of the court reporter, the court officer and the clerk, all of whom are paid by the State. Counsel must be made to understand that the time of the court is precious. In the scheme of things, the calenders must be moved so that all who seek justice may do so without undue delay. The waste of the court’s time must surely impact on the attorneys who wait for disposition of cases that come before theirs. If all attorneys behaved as counsel for the defendant, it would have a severe impact on the administration of civil justice in this State. Thus the frivolous conduct calls for a severe sanction.
Counsel for the defendant is a member of the firm of Rifkin, Radler & Kremer, Esqs. This firm has a reputation as a prestigious firm representing banks, insurance carriers and important corporate clients. Certainly, the firm’s clients are charged according to the "billable hours” of service to their clients. To maintain the courts, the time accorded to the citizens of this State who came here for justice is just as, if not more precious than, the time that law firms must accord to their clients. Accordingly, the court must impose the maximum sanction allowed to discourage the type of conduct which serves to waste the court’s time and resources.
The sanction must be remitted to the Lawyers’ Fund for Client Protection forthwith.