■ COURTROOM TELEVISION NETWORK, Appellant, v FOCUS MEDIA, INC., Respondent. [695 NYS2d 17] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered

December 11, 1998, granting defendant's motion pursuant to CPLR 3211 (a) (8) to dismiss the complaint for lack of personal jurisdiction, unanimously reversed, on the law, with costs, the defendant's motion denied, and the complaint reinstated.

The issue in this breach of contract action is whether a New York court may assert jurisdiction over defendant Focus Media, Inc. (Focus), a California corporation. At all times relevant to this action, plaintiff Courtroom Television Network (Court TV) was a New York partnership located in New York City. Defendant Focus is an advertising and media-buying firm which places advertising on television broadcasts on behalf of its clients. In the fourth quarter of 1997, Focus bought 345 advertisements on Court TV on behalf of Focus's client Tactica. Plaintiff brought this action to recover on 10 allegedly unpaid invoices totaling over $101,000.

Focus is not licensed to do business in New York, nor does it have employees or an agent for service of process in New York. Moreover, it has no bank account or telephone listing in New York. Focus and Court TV negotiated the sale of advertising time for the 345 advertisements in question by means of telephone calls, letters and faxes between the parties. After Court TV accepted Focus's offer, Focus sent review tapes of the advertisements to Court TV in New York. Once the advertisements were approved, Focus sent dub tapes which were then broadcast by Court TV in the agreed-upon time slot.

The IAS Court granted Focus's motion to dismiss the complaint. The court found that Focus had insufficient contacts with New York for the assertion of general jurisdiction under CPLR 301, because it did not do business in this State on a continuous and systematic basis (*Landoil Resources Corp. v Alexander & Alexander Servs.*, 77 NY2d 28, 33). The shipment of review tapes and dub tapes was found not to constitute supplying goods and services under CPLR 302 (a) (1). Finally, the court deemed Focus's contacts with New York for the purpose of buying advertising space on Court TV insufficient to qualify as transacting business in New York under CPLR 302 (a) (1).

Under CPLR 302, a nondomiciliary defendant is subject to the jurisdiction of New York State courts if the defendant engaged in some purposeful activity within the State and there is a substantial relationship between the activity and the cause of action sued upon (*Amodeo v Star Mfg. Co.*, 88 AD2d 1081, 1082). The statute sets forth various grounds for long-arm jurisdiction. For instance, under CPLR 302 (a) (1), an out-of-State defendant may be sued in New York if it "transacts any business within the state or contracts anywhere to supply goods

or services in the state". The requisite contacts may take place by mail or telephone; physical presence in the State is not required (*Parke-Bernet Galleries v Franklyn*, 26 NY2d 13). The key inquiry is whether defendant purposefully availed itself of the benefits of New York's laws (*Parke-Bernet Galleries v Franklyn, supra*, at 19). Jurisdiction may be predicated on a transaction conducted by means of telephone calls, faxes, and the acts of an in-State agent (*Camel Invs. v Transocean Capital [Bermuda]*, 195 AD2d 533, 534).

*Lupton Assocs. v Northeast Plastics* (105 AD2d 3, 7) found jurisdiction under the "transacts any business" test of CPLR 302 (a) (1) where, as here, the out-of-State defendant contracted with the plaintiff for the latter to perform commercial activities in New York for the defendant's benefit. The defendant in *Lupton* made one shipment of goods to New York for plaintiff to sell on its behalf, as per the contract. While the IAS Court was correct that Focus's sending of the review and dub tapes did not qualify as "supply[ing] goods and services" in New York because Focus was not selling tapes, the act of sending the tapes of advertisements into New York to be broadcast from Court TV's New York studio was a purposeful transaction of business in the State. The Fourth Department's analysis in *Lupton* explicitly did not depend on a finding that the defendant was selling goods in New York. Rather, the court found that the services plaintiff performed under the contract for defendant's benefit amounted to defendant's transaction of business in New York.

Here, defendant created tapes of advertisements to be broadcast from a New York studio and sent them to plaintiff in New York and intended the performance of the contract to occur in New York. Defendant was more than a passive buyer of a New York product or service; it played a "crucial role" in creating the substance of the transaction, amounting to doing business in New York (*Plotch v Sheibar*, 201 AD2d 431). This fact distinguishes the instant case from *J.E.T. Adv. Assocs. v Lawn King* (84 AD2d 744, *appeal dismissed* 56 NY2d 648), in which the plaintiff not only advertised the defendant's franchise but created the advertisements. Thus, it could be said that all of the New York activity was performed by the plaintiff and was not attributable to the defendant. That is not the case here.

Additionally, New York has an interest in asserting jurisdiction over defendant, as a State with a high concentration of media outlets which receive materials from all over the country. Broadcasters like plaintiff would be at a serious disad-

vantage were they forced to litigate in the home States of every media buyer who created programming for their networks. A nondomiciliary which takes advantage of New York's unique resources in the entertainment industry has purposefully availed itself of the benefits of conducting business in the State, such that long-arm jurisdiction may be asserted where the cause of action arises out of that transaction (*Berk v Theatre Arts*, 157 Misc 2d 696, 701). Concur—Rosenberger, J. P., Williams, Tom, Wallach and Buckley, JJ.